[Civil No. 661. Filed March 15, 1899.]

[56 Pac. 735.]

JAMES D. MONIHON, Defendant and Appellant, v. E. S. WAKELIN, Plaintiff and Appellee.

1. LANDLORD AND TENANT—COVENANT TO RENEW—SPECIFIC PERFORMANCE—APPEAL AND ERROR—FINDINGS—SUFFICIENCY OF EVIDENCE. —In an action for specific performance of a covenant to renew a lease, a finding that the lessor had made no contract for the letting of the premises to any other person, and was in the same position respecting said premises and the leasing thereof as on the day the option to renew expired, is sustained by evidence that while it was probable the lessor could have rented to a third party at an enhanced figure, yet he had not entered into any binding agreement so to do.

Arizona 6—15

2. SAME—SAME—SAME—FAILURE TO GIVE NOTICE—UNAVOIDABLE ACCI-
DENT WITHOUT INJURY TO LESSOR.—A court of equity will decree
specific performance of renewal in a lease, where the lessee, by
reason of unavoidable accident, causing disability, failed to give
notice of his intention to renew within the time specified in the
lease for the giving of such notice, he having actually given such
notice at the first opportunity, and where it appears that the lessor,
by reason of the delay in giving notice, is not put in a worse
position than he would have been had notice been given.

3. SAME—SAME—CONSIDERATION—SUBSTANTIAL PART OF CONTRACT.—A
covenant to renew a lease is more than a naked option or a uni-
lateral agreement, and, unless it is otherwise declared in the instru-
ment itself, constitutes a substantial part of the whole contract,
because it may well be considered as a material inducement which
led to its execution.

4. SAME—SAME—TIME THE ESSENCE OF.—Time is of the essence of
covenants of renewal in written leases, where the giving of notice
of intention within a specified time is made condition precedent
to such renewal.

5. CONTRACTS—TIME ESSENCE OF—REASONABLE TIME—DISTINCTION.—
The distinction between a contract in which time is of the essence
and a contract in which time is not made of the essence is, that
strict performance is required of the terms of the former within
the time specified, where such performance is possible, and the
latter is regarded only as requiring that its terms be performed
within a reasonable time.

6. SAME — SAME — SPECIFIC PERFORMANCE — FAILURE TO PERFORM —
CAUSED BY OTHER PARTY—ACCIDENT—DUE DILIGENCE—WITHOUT
INJURY TO OTHER PARTY—INJURY—TEST.—Where it appears that
by act of the other party, or by unavoidable accident, such as could
not be foreseen and guarded against, the performance of a contract
of which time is of the essence even with the exercise of due dili-
gence was rendered impossible, and the party at the earliest oppor-
tunity performed his part of the contract, the court will enforce
it, provided the parties be left in the same, relative position they
would have been in had not delay occurred in the performance of
the contract according to its terms.   In determining whether the
contract can under such circumstances be enforced without injury,
the test is not that the one party may be able to profit by the
failure of the other, but rather that he does not lose an advantage
which he would have had had no failure occurred.

7. LANDLORD AND TENANT—COVENANT TO RENEW—FAILURE TO GIVE
NOTICE—WANT OF GOOD FAITH—DILIGENCE.—Want of good faith
or diligence can not be predicated upon the fact that the lessee
did not give notice of his intention to renew a lease prior to an
accident which prevented the giving of notice until after the time
limited in the lease had expired, where it appears that the lessor

lived in the same town as the lessee and two days remained within
which to serve the notice at the time the accident occurred.

APPEAL from a judgment of the District Court of the
Third Judicial District in and for the County of Maricopa.
Webster Street, Judge. Affirmed.

The facts are stated in the opinion.

C. F. Ainsworth, Thomas D. Bennett, and Joseph Campbell,
for Appellant.

The specific performance of a contract in equity is not a
matter of right in the party, but a matter of sound discretion
in the court, which may grant or deny relief, as may appear
equitable under all the facts and circumstances. Beach on
Modern Equity Jurisdiction, sec. 566.

The right to a renewal is a mere option. It is not a mutual
covenant. The test of mutuality is this: Could Monihon
on the first day of May, 1898, have compelled Wakelin to
take a new lease for a further term of five years. There is
not one sentence in the lease that binds Wakelin to take a
renewal. If Monihon had gone into court to compel Wakelin
to specifically perform the contract, he would have been
unable to frame a complaint that would state a cause of action.
As the covenant itself terms it, it is a "privilege," an option,
to be taken advantage of by Wakelin if he so desired. It
binds Monihon if the terms thereof are complied with by
Wakelin, but nowhere in the lease is there a corresponding
covenant compelling Wakelin to accept a renewal. The cove-
nant is therefore unilateral. *Bruce* v. *First National Bank,*
70 N. Y. 154, 35 Am. Rep. 505; *Swank* v. *Railroad,* 72 Minn.
380, 75 N. W. 594.

Time was of the essence in this contract. "If the parties
have expressly treated time as of the essence of the contract,
or if it necessarily follows from the nature and circumstances
of the agreement that it should be so regarded, courts of
equity will not lend their aid to enforce specifically the agree-
ment regardless of the limitation of time." *Coleman* v. *Ap-
pelgarth,* 66 Md. 21, 6 Am. St. Rep. 417, 11 Atl. 284.

"Where a contract is in anywise unilateral, as, for instance,
in the case of an option to purchase, or a right of renewal,
or of any other condition in favor of one party and not of

the other, then any delay in the party in whose favor the contract is binding is looked at with special strictness. . . . In such cases a court of equity will hold that in consequence of one party being bound and yet unable to enforce the unilateral contract against the other, who is free, the parties do not stand on an equal footing, and that, in consideration of these things, time must be deemed of the essence of the contract, and that when the time given by the memorandum expires without performance on the part of the option-holder the right of such holder is *ipso facto* gone.'' *Hollman* v. *Conlon,* 143 Mo. 369, 45 S. W. 275.

''But where the contract imposes no obligation upon him, leaves it optional with him to do a certain thing at a certain time, in such a case time is of the essence of the contract; in the broadest sense of the rule, and the failure of the party to comply with its terms deprives him of the right to demand the enforcement of the contract.'' *Stembridge* v. *Stembridge,* 87 Ky. 91, 7 S. W. 613. See, also, *Carter* v. *Phillips,* 144 Mass. 102, 10 N. E. 500; *Mason* v. *Payne,* 47 Mo. 518.

It is immaterial how sick Wakelin was or how seriously he was injured. He comes into court with bad grace, crying of his injuries, and because of them asks to be forgiven for violating his contract, for the reason that he had four years and six months almost before the day of his accident in which to give this notice to Monihon. He had a long period in which to give this notice. If he chose to postpone it and run the chances up to the last minute, he, and not Monihon, should suffer for his hazard. He should endure the results of his own negligence. *Mason* v. *Weirengo,* 113 Mich. 151, 67 Am. St. Rep. 461, 71 N. W. 489; *Herter* v. *Mullen,* 9 App. Div. 593, 41 N. Y. Supp. 708; *Haynes* v. *Aldrich,* 133 N. Y. 287, 28 Am. St. Rep. 636, 31 N. E. 94.

Baker & Bennett, for Appellee.

It is a well-established principle of equity jurisprudence that time is not of the essence of the contract unless made so by the parties. But it is contended that this contract does not fall within this rule, because it is an optional or unilateral contract; that such contracts are not favored in equity; and that the party having the option must strictly perform his part of the contract before he is entitled to the benefit of the

option. It may be admitted, for the sake of the argument, that contracts purely optional or unilateral are looked upon, both at law and in equity, differently from those contracts which are mutual. That the parties claiming the benefit of the contract, and asking for its enforcement in a court of equity, will be held to a stricter performance on his part than on the case of contracts that are mutual and are equally binding on both parties. But the error into which counsel have fallen is in classing the contract now in consideration as a unilateral or one-sided contract. In the case of *House* v. *Jackson,* the supreme court of Oregon says: "It is now well settled that an optional agreement to convey or renew a lease without any covenant or obligation to purchase or accept, and without any mutuality of remedy, will be enforced in equity if it is made upon proper consideration, or forms part of a lease or other contract between the parties that may be the true consideration for it." *House* v. *Jackson,* 24 Or. 89, 32 Pac. 1027. To the same effect, see *Schroeder* v. *Gemeinder,* 10 Nev. 355; *Stansbury* v. *Fringer,* 11 Gill & J. (Md.) 152; *Souffrain* v. *McDonald,* 27 Ind. 269; *Cooper* v. *Pence,* 21 Cal. 404; *Hall* v. *Center,* 40 Cal. 63; *Waters* v. *Bew,* 52 N. J. Eq. 787, 29 Atl. 590.

It will be seen, therefore, that an optional provision in a mutual contract is not within the principle applied by courts of equity to contracts wholly optional in their character, and that when the optional clause forms part of a lease or other contract the whole contract will be treated in equity as a mutual contract, and the general equitable doctrine that time is not of the essence of the contract unless specifically made so by the parties will be applied to the whole contract.

The case of *New York Life Ins. Co.* v. *Reston* was an action for the specific performance of a covenant to renew, contained in a lease, provided lessee gave notice of his intention to renew prior to certain date. The notice was not given until thirty-five days after the date specified in the lease. The excuse given was, that the lessee had honestly been mistaken as to the time the notice should have been given, but no fraud or fault on the part of the lessor was charged. When the notice was given the lessee was informed that the time had expired and no renewal would be made. In the decision of this case the court says: "In the absence of any express intention

on his part, it cannot reasonably be presumed that the plaintiff would knowingly surrender so valuable an interest as he had in that lease without adequate compensation. Neither should its honest mistake of a fact, under all the circumstances, be regarded as laches. . . . Time was not originally of the essence of the contract. It was not ingrafted into it by subsequent notice, and the delay on plaintiff's part in expressing his option was not so great as to constitute laches. I cannot assent to the proposition that there was no mutuality in the covenant to renew.'' The court decreed a renewal of the lease as prayed for. *New York Life Ins. Co.* v. *Reston,* 10 Abb. 50. To the same effect are *Reed* v. *St. John,* 2 Daly, 213; *Banks* v. *Haskell,* U. S. Dig. 1877, 493; *Jones* v. *Robbins,* 29 Me. 351, 50 Am. Dec. 593; *Selden* v. *Camp,* 95 Va. 527, 28 S. E. 877.

SLOAN, J.—The appellant, James D. Monihon, is the owner of a building in the city of Phœnix known as the ''Monihon Block.'' On the first day of May, 1893, Monihon leased to J. A. Kurtz and E. S. Wakelin the corner storeroom in said building for the term of five years, at the rental of one hundred dollars per month. The lease was in writing, and contained the following provision: ''The lessees by giving lessor six months' written notice, shall have privilege to renew this lease at end of term for same purposes, and rate of rent and manner of payment, as above.'' This lease was, during the term, assigned to Wakelin & Co., a firm composed of E. S. Wakelin and Amanda Kurtz. Subsequently, Amanda Kurtz withdrew from the firm, and Wakelin continued in possession of the leased premises, and paid the rent as it became due. The original term of the lease expired May 1, 1898. On October 28, 1897,—two days before the expiration of the time within which, by the terms of the lease, the lessees might exercise their option of renewal,—Wakelin was thrown from his horse, and so severely injured that he was taken to the hospital, where he remained physically and mentally incapacitated for business until November 22, 1897. On this day he was taken by his physician to his store, where he wrote out a notice of his intention to claim a renewal of the lease, and had this notice served upon Monihon. In the meanwhile Monihon had entered into negotiations with one Keifer for

the renting of his storeroom at one hundred and forty dollars · per month, but no binding agreement had been entered into for the renting of the storeroom to Keifer prior to service of the notice of Wakelin's intention to renew. Monihon refused to renew the lease to Wakelin at the expiration of the term, claiming that the latter had forfeited his right of renewal because of his failure to give notice of his intention within the time specified in the lease, whereupon Wakelin brought this suit to compel Monihon to specifically perform the covenant of renewal, and execute a new lease. A decree was entered by the court below in favor of Wakelin, as prayed for in the complaint.

The findings of the court upon what we consider the central and controlling facts in the case were as follows: "That the court further finds that on October 28, 1897, more than six months before the expiration of said lease, plaintiff had elected and determined to exercise his option to renew said lease, and had then determined and intended to give the defendant notice in writing of such intention and determination six months prior to the expiration of the term of said lease, but because of an accident that happened to plaintiff without his fault, and which he could not prevent, the plaintiff was so injured as to render him physically and mentally incapacitated from giving such notice at any time between the said 28th day of October, 1897, and on the 22d day of November, 1897, the plaintiff did give the defendant written notice of his election and determination to demand renewal of said lease for the term of five years from its expiration; and the court further finds that at the time said notice was given, on November 22, 1897, the defendant, J. D. Monihon, had made no contract for the letting of said premises to any other person, and was in the same position respecting said premises, and the use or leasing thereof, as on November 1, 1897." Appellant attacks these findings of the court, and particularly the one that on November 22d, when the notice was given by Wakelin of his intention to renew, Monihon had made no contract for the letting of the premises to any other person, and was in the same position respecting the premises and its leasing as on November 1, 1897, when, by the strict letter of the contract, Wakelin's option to renew expired. An examination of the testimony upon this point

discloses that while it is very probable that Monihon could
have rented the premises to Keifer at the expiration of the
lease for one hundred and forty dollars per month, yet it
was not shown that he had entered into any binding agree-
ment of lease with Keifer or any one else; and hence the find-
ing is supported by the evidence. The question, therefore,
becomes one of law, which may be stated thus: Will a court
of equity decree specific performance of a contract of renewal
in a lease, where the lessee, by reason of unavoidable accident
causing his disability, failed to give notice of his intention
to renew within the time specified in the lease for the giving
of such notice, and the notice is actually given at the first
opportunity offered the lessee, and where it appears that the
lessor, by reason of the delay in giving notice, is not put in
a worse position than he would have been in had the notice
been given in time? It is contended by counsel for appellant
that the covenant to renew the lease was nothing more than
a naked option—a unilateral agreement. If this contention
be sound, it has an important bearing upon the question under
consideration. An option to purchase, or to renew a lease,
standing alone, unsupported by any consideration which has
passed, both in law and equity is regarded differently from
a covenant to convey, or to renew a lease forming an integral
part of a contract or lease, containing several distinct cove-
nants, and founded upon an adequate consideration. The
latter is treated as more than a mere privilege, and as having
all of the elements of a mutual contract. *Hall* v. *Center,* 40
Cal. 63; *Souffrain* v. *McDonald,* 27 Ind. 269; *House* v. *Jackson,*
24 Or. 89, 32 Pac. 1027. Such covenant to convey or to renew
a lease, unless it be otherwise declared in the instrument itself,
is properly held to constitute a substantial part of the whole
contract, because it might well be considered as a material
inducement which led to its execution. In the case at bar this
is illustrated by the testimony of Wakelin. In effect, he testi-
fied that, had no covenant to renew been inserted in the writ-
ten lease, he would not have agreed to it, for the reason that
the premises at the time had a prospective value as a place
of business greater than it then possessed, and he therefore
agreed to pay the stipulated rent for the term, because of
the privilege of leasing the premises for a further term when
the premises, through the growth of the town and the exten-

sion of trade, should be made more valuable to him as a business stand. We view the covenant to renew in the lease as a mutual contract, founded upon an adequate consideration, and will therefore give attention to the law applicable to contracts of renewal, rather than to mere options to renew.

It is contended that time is of the essence of such a contract of renewal, and that, therefore, equity cannot, without making a new contract between the parties, relieve against its forfeiture, even if occasioned solely by unavoidable accident, and may not decree specific performance of such contract under such circumstances. That time is of the essence of such a contract is doubtless true. Covenants of renewal in written leases, where the giving of notice of intention within a specified time is made a condition precedent to such renewal, are generally so understood and treated by the parties themselves, and so regarded by the courts. The reason why they are so regarded is that a failure to give notice might result in serious loss and inconvenience to a lessor, and, when such a result is apt to follow a failure to comply with the terms of a contract calling for the performance of any act within a particular time, time is then regarded as of the essence of such contract. It is therefore required of a party to such a contract that he keep his contract with literal strictness, or suffer the consequences of his failure. The distinction between a contract in which time is of the essence and a contract in which time is not made of the essence is that strict performance is required of the terms of the former within the time specified, where such performance is possible, and the latter is regarded only as requiring that its terms be performed within a reasonable time. While the law so regards and treats a contract in which time is of the essence, it is not true that a court of equity will refuse in every instance to specifically enforce a contract in which time is of the essence, and where its terms in this respect were not literally complied with; nor is it strictly true that in so doing a new contract is made between the parties. It is rather true that a court of equity, in relieving against the consequences of unavoidable failure to perform the contract within the time specified, does so upon the theory that it is enforcing the contract in the true intent and meaning of the parties; for it will not be regarded that anything more is intended by such a contract than that

there should be perfect good faith and utmost diligence to perform its terms within the time specified. Anything short of the utmost good faith and diligence on the part of the party seeking to be relieved from the consequences of a failure to conform strictly to the terms of such contract will not be regarded as sufficient; but where it appears that by the act of the other party, or by unavoidable accident of such character as could not be foreseen and guarded against, the performance of the contract with the exercise of due diligence was rendered impossible, and the party at the earliest opportunity performed his part of the contract, the court will enforce it, provided this can be done, and the parties be left in the same relative position they would have been in had no delay occurred in the performance of the contract according to its terms. In determining whether the contract can, under such circumstances, be enforced without injury, the test is not that the one party may be able to profit by the failure of the other, but rather that he does not lose an advantage which he would have had had no failure occurred.

Applying these principles to the case at bar, the court found that the giving of notice by Wakelin within the time specified in the contract was rendered impossible by reason of his accident and misfortune, that he availed himself of the earliest opportunity to give the notice which his situation permitted, and that Monihon did not suffer loss by reason of the delay. It is such a case as warranted a court of equity in enforcing the contract, notwithstanding the failure of Wakelin to comply literally with the terms of the covenant of renewal. Want of good faith or diligence could not be predicated upon the fact that Wakelin did not give notice prior to his accident, for to do so would be to inflict a penalty upon him for availing himself of a right given him by the contract. Had Wakelin waited until the last moment, and then was prevented by accident from giving notice, his conduct might then have properly been characterized as culpable negligence. But the fact was that Wakelin had two whole days within which to serve the notice upon Monihon, who, as it appears, was at the time in Phœnix; and hence, in the ordinary course of things, there was ample time remaining within which he could have been reached and served with notice. We conclude therefore, under the findings, that no equitable principle was violated by

the trial court in decreeing specific performance of the covenant to renew the lease in question, and the judgment is accordingly affirmed.

Davis, J., and Doan, J., concur.