# Richmond

### JOSEPH LEE MCCLELLAN v. DOUGLAS L. ASHLEY, ET AL.

June 16, 1958.

Record No. 4798.

Present, All the Justices.

The opinion states the case.

*Robert C. Goad*, for the appellant.

*William M. McClenny*, for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The question in this case is whether a court of equity should

relieve a lessee of the consequences of his failure to give a notice of renewal as required by the lease.

The lease was made by Douglas L. Ashley and his wife, the appellees, to Joseph Lee McClellan, the appellant, and was dated October 23, 1954. By it the lessors leased to the lessee a lot of approximately one acre on U. S. Highway 29, about a mile south of the town of Lovingston, in Nelson county, known as Ashley's Service Station. The lease contained this provision: "The Lease shall become effective November 1, 1954, and remain in full force and effect for two years with the right and option to the Lessee to renew the same for an additional period of four years, at the expiration of which Lessee shall have the further option to renew for an additional four years, provided, however, the Lessee shall give the Lessor 30 days written notice of his intention to renew said lease before it expires."

The lease further provided, so far as here material, that the lessee would maintain the buildings in their present state of repair, except for reasonable wear and use; that he might, at his own expense, tear down and move the canopy in front of the building and alter the interior of the buildings; that if the lessee erected any buildings not adjoining the main buildings, or installed any equipment or signs on the premises, he could remove them at any time during the lease; that the lessee was not to sublet the premises or any part thereof without the written consent of the lessors; that the lessee might, at his expense, build a custard stand and two rest rooms, grade and hard surface the driveway and parking area around the building, and cover the front of the present building, all not to exceed $3,000, and when the lease was terminated the lessors would pay to the lessee one-half of the amount which the said improvements added to the value of the premises at that time, but not to exceed $1,500; that the lessors and the lessee would share equally the upkeep and repair of the electric water pump and tank and the gas hot water heater. The gasoline, oil and grease equipment on the premises belonged to the American Oil Company. The lessee was to pay $65 a month for the rent of the premises.

The original term of the lease expired November 1, 1956. The lessee did not give to the lessors any notice, written or otherwise, of his intention to renew thirty days before that date, and on October 5, 1956, the lessors, by their attorney, wrote the lessee stating that in addition to previously violating the contract by subletting the premises without written consent, he had failed to give notice

of intention to renew, and inquiring whether he would get out on November 1, 1956, or whether action would have to be taken to dispossess him. He was advised that any further work or changes on the property would be at his risk.

By letter dated October 8 and received by the lessors on October 9, 1956, the lessee wrote: "I hereby give you written notice of my intention to renew the lease for a period of four years."

On November 10, 1956, the lessors instituted an action of unlawful detainer to get possession of the premises and on November 30, 1956, the lessee filed his bill in equity to enjoin the prosecution of the law action and to have a decree construing the renewal provision "most favorably to the rights of the complainant," adjudicating that he had fully complied with the terms of the lease and that the lessors be required to grant a renewal for an additional term of four years from November 1, 1956. He alleged that the renewal provision of the lease was ambiguous and that he should not be bound by the strictest interpretation thereof; that the lessors knew that he had intended to renew the lease and he had intended to give the written notice before October 1, 1956, and the delay was due to mere inadvertent neglect on his part. He alleged that he had at all times carried out the terms of the lease and that he had improved the property at great expense on the assumption that he would have possession for at least ten years, and if he should lose possession of the property he would suffer a tremendous and irreparable loss and would be left hopelessly in debt and if the lessors were given possession they would be unjustly enriched by reason of acquiring the improvements along with the good will of the business, and that it would be unconscionable to deny him a renewal for an additional four years.

The lessors answered, denying the allegations of the bill and specifically denying that the lessee had at all times carried out the terms of the lease, but asserting that he had violated it by subletting part of the premises for which he knew steps were to be taken to remove him from the premises, and that the lessors knew nothing of his intention to renew until after notice to vacate had been given him; that instead of improving the property the lessee had damaged it. They denied that loss of possession would cause irreparable damage to the lessee or result in unjust enrichment of the lessors.

The law action and the equity suit were by agreement heard together. The court heard the evidence *ore tenus* and, for reasons

given in a written opinion, decreed that the lessors recover possession of the premises; that the lessee pay the rent due under the lease from October 1, 1956, but that he recover the $1,500 on improvements as provided in the contract; that the lessee was not entitled to the relief prayed for and his bill was accordingly dismissed, but he was allowed to remove a prefabricated dwelling house he had placed on the premises over the objection of the lessors, together with all his stock of merchandise, furniture, fixtures and equipment, and to retain all his accounts receivable. Execution of the decree was stayed during the pendency of this appeal.

Notwithstanding the allegation of his bill, the lessee makes no contention that there was or is any ambiguity in the provision of the lease requiring notice of intention to renew. He testified that when the lease was prepared it was read and explained to him; that he understood the contract and that it required him to give thirty days' written notice in case he wanted to renew. His only excuse for his failure to give the notice was: "I just merely overlooked it."

There could be no room for misunderstanding the renewal provision of the contract, as may be seen from its wording quoted above.

By his evidence the lessee sought to establish that he would suffer great hardship and loss to a degree which would make it unconscionable to deny to him a renewal of the lease. He introduced evidence to the effect that when he took possession of the property it was run down and had a bad reputation due to the way it had been operated by the Ashleys, whose alcoholic beverage license had been revoked on that account. He testified that he had spent for permanent improvements $4,318.24, together with $262.27 for repairs; that he had paid the Ashleys $2,873 for their fixtures and had bought new equipment to the amount of $1,790.07; that his merchandise inventory was $2,905.57 and his accounts receivable $1,530.40. From his operations he had a net loss in 1955 of $4,373.93, but a net gain in 1956 of $3,017.81. His gross sales for 1956 had exceeded those for 1955 by about $7,000. He owed debts totaling $18,445.78, which he had been paying on at the rate of about $300 a month. His debts exceeded his assets. He also offered evidence to the effect that the property had increased in value by 50% since he took possession and that there was no other business location available to him in that vicinity. He said that if he was forced to move out now the result to him would be bankruptcy.

As the court pointed out in its opinion, the relations of the parties

had not been harmonious during the tenancy. The lessors had objected to a number of things done by the lessee on the property and to some that he had failed to do, resulting, they claimed, in damage to their premises. In spite of the provision of the lease against subletting any part of the premises without written consent, the lessee made an agreement with his uncle by which the uncle purchased the grocery-restaurant business from the lessee and the lessors claimed that the lessee sublet part of the premises as part of this transaction. On August 9, 1956, their attorney wrote to the lessee, sending a copy to his counsel, that action would be taken to disposses him because he had thus breached the contract. They had also protested against his erecting on the premises the dwelling house which the decree appealed from allowed him to remove.

The trial court found that the principal ground relied on by the lessee to establish hardship was his financial loss, but, as the court pointed out, the lessee may liquidate or remove the items of accounts receivable, inventory and fixtures, which total $9,099.04 of his alleged loss. While he testified that the permanent improvements he made cost $4,318.24, his contract was that such improvements were not to cost in excess of $3,000, of which the lessors are required to refund to him $1,500. There was no evidence that the lessors would suffer any special loss in renewing the lease other than loss of possession of what was to be theirs under the contract when it terminated and the continuance of their relationship with a tenant whom they considered undesirable.

While the financial loss that will be suffered by the lessee on failing to obtain a renewal of the lease will be substantial and perhaps serious to him, yet it is clear that his difficulty can in no wise be charged to the fault of the lessors and he alone is the author of his misfortune. Courts, even in equity, must respect lawful contracts made by competent persons, and sympathy is not a ground for equitable relief.

In *Berkow* v. *Hammer*, 189 Va. 489, 53 S. E. 2d 1, the lessee claimed that the renewal clause was ambiguous and that he had complied with the tenor of his contract, but if not then equity should grant him relief because of circumstances of special hardship. The hardship sought to be shown there consisted, as here, of financial loss to the lessee due to the repairs and improvements he had made, the loss of the good will he had established, and there the higher rent he would have to pay elsewhere. We held those circumstances were

not of such special hardship as to make it unconscionable to enforce the condition precedent of the renewal; that the mere fact that the premises would be useful and profitable to the lessee gave us no right to write a new contract between him and his lessors, and that the lessee's loss of his right to renew was due to his own fault.

It is generally held, as was pointed out in that case, that time is of the essence of the option to renew and the provision for the notice is a condition precedent upon the performance of which the lessee's right to renew depends. It is also generally held, and we now hold, that before equity may relieve the lessee of the consequences of his failure to give the notice, there must be equitable grounds for such relief, such as fraud, mistake, surprise or accident. See the cases cited in *Berkow* v. *Hammer, supra,* 189 Va. at 497-8, 53 S. E. 2d at 5; and also *Dugan* v. *Haige,* (Fla.) 54 So. 2d 201; *Pope* v. *Goethe,* 175 S. C. 394, 179 S. E. 319, 99 A.L.R. 1005; *Clayman et al.* v. *Totten,* 56 App. D. C. 115, 10 F. 2d 910; *Rounds* v. *Owensboro Ferry Co.,* 253 Ky. 301, 69 S. W. 2d 350; *Scott-Burr Stores Corp.* v. *Wilcox,* 5 Cir., 194 F. 2d 989; *Jones* v. *Gianferante,* 305 N. Y. 135, 111 N. E. 2d 419; and Anno. 44 A.L.R. 2d 1359.

Equity aids the vigilant. Negligence is not favored as a ground for equitable relief, and when the lessee is able to assign no excuse for his failure to give the required notice other than his own negligence, to which the lessor in no way contributed, he is not entitled to be rescued by a court of equity from the consequences of his negligence. 32 Am. Jur., Landlord and Tenant, § 981, page 824; *Medomak Canning Co.* v. *York,* 143 Me. 190, 57 A. 2d 745; *Monihon* v. *Wakelin,* 6 Ariz. 225, 56 P. 735; *I.X.L. Furniture etc. House* v. *Berets,* 32 Utah 454, 91 P. 279; *Dikeman et al.* v. *Sunday Creek Coal Co.,* 184 Ill. 546, 56 N. E. 864.

In the case last cited it was said:

"* * There was no fraud, accident or mistake on account of which complainant neglected to avail itself of the option, and it assigns no explanation or excuse for the delay except the negligence of its own agent. It lost its legal right by failing to comply with the condition precedent, and we do not see how equity can relieve against mere forgetfulness. * *." 184 Ill. at 551, 56 N. E. at 865.

In *Fountain Co* v. *Stein,* 97 Conn. 619, 118 A. 47, 27 A.L.R. 976, it was said that fraud, accident, surprise and mistake are well recognized grounds for equitable relief, but none was applicable to a case where a failure to give notice was due to mere forgetfulness without

other considerations; that the better rule was that in cases of willful or gross negligence equity will not relieve, but in cases of mere negligence equity should relieve when the delay has been slight, the loss to the lessor small and refusal of relief would result in such hardship to the lessee as to make literal enforcement of the contract unconscionable. See also *Xanthakey et al.* v. *Hayes,* 107 Conn. 459, 140 A. 808.

As observed in the *Berkow* case, *supra,* this is a broader rule than is followed by most of the courts, as appears from the cases cited in that opinion and hereinabove, and we think it more consonant with the general principles of equity to deny relief where failure to give the notice required by the contract is due solely to the negligence of the lessee, unaccompanied by fraud, accident, mistake or surprise, and unaffected by the conduct of the lessors.

Even under the broader rule of the Connecticut cases it could not properly be said that the failure of the lessee in this case to give the notice in time should be classified as "mere" negligence. He knew that the lessors were dissatisfied with him as a tenant. He testified that in the summer of 1956 he started the construction of two outside rest rooms and did not finish them because Mrs. Ashley told him she was going to try to get the place back. He was notified by letter less than two months before the renewal notice was required to be given that the lessors would seek to evict him on the ground that he had violated the terms of the lease. With that knowledge it was hardly less than gross negligence for him to fail to comply with the clear provision of his lease that if he was to have the right to renew he must give the notice that his contract required.

The powers of courts of equity may not be arbitrarily exercised to alter the terms of a contract understandingly made in order to relieve an unfortunate situation caused solely by the negligent failure of the party seeking relief to observe its requirements. "Hard cases must not be allowed to make bad equity any more than bad law." *Moore* v. *Pierson,* 6 Iowa 279, 71 Am. Dec. 409, 417. The hardship relied on to gain relief must be related to some principle within which equity moves, otherwise relief would be measured not by the contract made by the parties but by what might be considered by the court to be the exigencies of the situation in the particular case.

Our conclusion is to affirm the decree appealed from.

*Affirmed.*