427 A.2d 175

### The WESTERN SAVINGS FUND SOCIETY OF PHILADELPHIA,

v.

### SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Appellant.

Superior Court of Pennsylvania.

Argued June 13, 1980.

Filed March 6, 1981.

Lewis H. VanDusen, Jr., Philadelphia, for appellant.

C. K. Walters, Philadelphia, for appellee.

Before CERCONE, President Judge, and PRICE, SPAETH, HESTER, CAVANAUGH, BROSKY and WICKERSHAM, JJ.

PRICE, Judge:

The instant appeal is from the judgment entered pursuant to an order granting a motion for summary judgment in favor of Western Savings Fund Society of Philadelphia (hereinafter referred to as Western). Western sued in equity seeking to enforce an option to renew a lease against appellant, Southeastern Pennsylvania Transportation Authority (hereinafter SEPTA),[1] notwithstanding its failure to

---

1. SEPTA's predecessors in title include ConRail, Penn Central and the Pennsylvania Railroad Company. Brief for Appellant at 6 n.4. For clarity and because the particular designation has no bearing on

comply with a lease provision requiring that notice be timely filed. Reasoning that equitable relief was nonetheless appropriate, the chancellor granted Western's motion for summary judgment. Arguing both that the chancellor erred in denying its motion for summary judgment and in entering judgment for Western, SEPTA appealed. A three judge panel of this court reversed the chancellor's order and dismissed Western's complaint. (Filed October 12, 1979).[2] Western's petition for allocatur was denied by our supreme court on January 9, 1980. On March 19, 1980, we granted Western's application for reargument before the Court en banc. For the reasons which follow, we reverse the order granting summary judgment to appellee and direct entry of judgment for appellant.

The pertinent facts are undisputed. On November 26, 1965, Western and SEPTA entered into a lease agreement whereby Western leased certain premises in Philadelphia's Suburban Station Concourse at an annual rental rate of $10,350. The lease became effective April 16, 1966, was for a ten year term, and provided Western the option to renew for an additional ten year period at the 1966 rental rate. The manner in which the option was to be exercised was stipulated in the lease agreement as follows:

> That, if Lessee shall have satisfactorily performed its obligations and covenants herein contained, Lessee shall have the option of renewing this lease after expiration of the original term hereby created for an additional term of ten years, *upon giving three months' notice in writing to Lessor prior to the expiration of the said original term, of its intention so to do.* In the event said option is exercised, this lease shall continue for a further term of ten years under the same terms and conditions. *It being understood and agreed, however, that in the absence with-*

our consideration or disposition of this case, we will refer only to "SEPTA" regardless of the time period involved.

2. The panel consisted of President Judge Cercone and Judges Watkins and Hoffman. President Judge Cercone filed a dissenting opinion.

*in the time specified, of the aforesaid notice of Lessee of its intentions to exercise its option to renew this lease for an additional ten year term, said option herein granted shall expire absolutely,* and in this event the lease shall cease and determine at the expiration of the original ten year term.

Clause V(b) (emphasis added). *See* Record at 11a (Exhibit A).

Both appellant and appellee agree that the date by which notice was required to have been given pursuant to the lease was January 16, 1976. Western's notice was not mailed until January 20, 1976, however, and was not received by SEPTA until January 22, 1976. SEPTA thus rejected the notice because it was not timely filed and informed Western that the lease would expire at the end of the predetermined ten year term. SEPTA did offer Western a new ten year lease, however, albeit at a higher rental rate of $29,580 per year. Western initially accepted the offer but, ultimately, revoked its acceptance when it decided to seek specific enforcement under the more favorable 1966 terms. *See* Record at 20a. Western's suit in equity thus followed.

Termed an "administrative oversight" by one of Western's vice presidents, *see* Record at 29a, the delay was found by the chancellor to have been "occasioned by the fact that at the time of the exercising of the option to renew, [Western] was engaged in a 'massive branch expansion program.'" Slip op. at 2. Since SEPTA was not harmed by the delay and to safeguard Western's "large investment"[3] in the

3. The chancellor found that the lease obligated Western to make various improvements in the premises. To that end, Western apparently spent some $84,000. We note, however, that the lease agreement not only obliged Western to make the improvements but also stipulated that such improvements would become the property of the lessor (SEPTA) at the termination of the lease. Thus, it would have been unreasonable for Western to have had an expectation of continued retention of such improvements for any period longer than strict compliance with the lease would permit. Having agreed to the lease its only reasonable expectation was that it would have the *use* of such improvements for ten years and, assuming the option was timely exercised, for an additional ten year period. As was previously noted, moreover, appellant offered a new ten year lease upon

premises, the chancellor opined that the delay of six days "must be considered de minimis." Slip op. at 6. The chancellor thus deemed equitable relief appropriate and granted Western's motion for summary judgment. Appellant SEPTA contends that this was error. We agree.

■■■■ "[I]t is a sound legal principle that unless an option is exercised within the time fixed it necessarily expires: *McMillan v. Philadelphia Company*, 159 Pa. 142, 28 A. 220 [(1893)]; *Vilsack v. Wilson*, 269 Pa. 77, 112 A. 17 [(1920)]; *Rhodes v. Good*, 271 Pa. 117, 114 A. 494 [(1921)]; *Loughey v. Quigley*, 279 Pa. 396, 124 A. 84 [(1924)]." *Phillips v. Tetzner*, 357 Pa. 43, 45, 53 A.2d 129, 131 (1947). This is so because "[t]ime is always of the essence in an option contract." *New Eastwick Corporation v. Philadelphia Builders*, 430 Pa. 46, 50, 241 A.2d 766, 769 (1968). *Cf.* 6 Williston on Contracts § 853 at 212 (3d ed. 1962) ("whether the question arises either at law or in equity it is settled that 'time is of the essence of an option.'" *Id.* at 212–13 (footnote omitted)). *Accord, Unatin 7–Up Company, Inc. v. Solomon*, 350 Pa. 632, 39 A.2d 835 (1944).[4]

In urging us to ignore both the rule requiring punctuality in exercising an option and the express language of the lease agreement mandating the same, appellee contends that Pennsylvania courts recognize exceptions to the general rule, which exceptions "allow equity to relieve a tenant, in a proper case, from the consequences of a tardy renewal notice." Brief for appellant 7–8. Appellee's inability to cite

rejecting as untimely appellee's notice of renewal. Notwithstanding its own error, therefore, Western would, nonetheless, have received precisely what it had bargained for under the 1966 lease—twenty years' use of the improvements required by the lease. We thus find the chancellor's concern for preventing a forfeiture grossly overstated.

4. Obviously, the courts of this Commonwealth would enforce an option agreement even where notice was not timely filed if, for example, the timely notice requirement had been waived, either by agreement or by conduct of the parties. *See Cohn v. Weiss*, 356 Pa. 78, 81, 51 A.2d 740, 742 (1947); *Unatin 7–Up Co., Inc. v. Solomon*, 350 Pa. 632, 39 A.2d 835 (1944); *Schwoyer v. Fensternmacher*, 254 Pa.Super. 243, 380 A.2d 468 (1977).

a single Pennsylvania decision in which such exceptions were operative casts considerable doubt on the validity of this position. Appellee's reliance on *Unatin 7–Up Co., Inc. v. Solomon*, 350 Pa. 632, 39 A.2d 835 (1944), *Warner v. Bedell Co.*, 278 Pa. 576, 123 A. 490 (1924) (per curiam), and *McHenry v. Mitchell*, 219 Pa. 297, 68 A. 729 (1908), moreover, is misplaced.

*Unatin 7–Up Co., Inc. v. Solomon*, 350 Pa. 632, 39 A.2d 835, fails to vindicate appellee's position because it stands for the singular proposition that where the optionor himself prevents an optionee from accepting an option in a timely fashion, the optionee has done everything possible to affect a timely acceptance, and notice of acceptance is nonetheless given as soon after the prescribed time as is possible, given the optionor's conduct, the option will be specifically enforced. Rather than positing an exception to the rule requiring punctuality, therefore, the *Unatin* decision simply comports with the view in this Commonwealth that the timely notice requirement may be waived by agreement or by conduct of the parties, *see* note 4 *supra*, and, if such a waiver occurs, failure to give timely notice will not prevent the option from being enforced.

To be sure, the court in *Warner v. Bedell Co., supra*, gratuitously commented that, "Ordinarily, the possessor of [an option] must exercise it on the day, or within the time specified . . . and *nothing sufficient to take this case out of the general rule has been shown*." 278 Pa. at 578–79, 123 A. at 491 (citation omitted) (emphasis added). Even accepting, *arguendo*, appellee's premise that the italicized portion of the court's statement establishes Pennsylvania's recognition of exceptions, it does not follow *a fortiori* that the instant case is such an exception.

Analysis of the *Warner* holding reveals only strict adherence to the rule of punctuality and the requirements stipulated in the lease regarding the manner in which the option was to be exercised. Thus, where the lessor was obliged to give notice of his intent to cancel a lease by registered mail on or before a specified date, the notice was ruled untimely

since, although it was given by the lessor to one of his own employees on the correct date, the lessor's employee failed to deliver it to the lessee until the day following the required notification date. This result obtained notwithstanding the court's concession that, even had the lessor followed the procedure outlined in the lease, *viz.*, sending the notice by registered mail, the letter could not possibly have been received by the lessee until *at least* the day on which the notice was, in fact, hand delivered. Pivotal to this conclusion was the court's belief that time was clearly of the essence and thus, that

> *in contemplation of law,* the sending of the letter by registered mail on [the required date] would have been notice instanter of the exercise of the option . . . and hence within the express terms of the lease, whereas [the lessor's] personal delivery of the notice could not take effect before [the day following the required date] . . . after the right to cancel [the] lease had expired.

*Id.,* 278 Pa. at 578, 123 A. at 491 (citation omitted) (emphasis added).

Appellee's reliance on the court's pronouncement in *McHenry v. Mitchell,* 219 Pa. 297, 68 A. 729, that "[t]ime is *presumably* of the essence of this, and every other optional agreement," *id.,* 219 Pa. at 301, 68 A. at 731 (emphasis added), is similarly unavailing. Even if we assume that the court's use of the word "presumably" in some way intimates that exceptions to the rule of punctuality exist, the *McHenry* court's further conclusion that time is *always* of the essence when, as here, the contracting parties have made it so seemingly precludes the application of any such equitable exception.

Appellee purports to sustain its argument in favor of equitable relief by referring us to decisions by courts in other jurisdictions wherein equitable relief has been granted when: (1) the failure to give timely notice results *not from negligence* but rather from accident, fraud, surprise, or mistake; (2) the denial of relief would result in a serious forfeiture to the optionee; and (3) no such harm will befall

the optionor in the event that relief is granted to the optionee. *See e. g., Xanthakey v. Hayes*, 107 Conn. 459, 140 A. 808 (1928); *F. B. Fountain Co. v. Stein*, 97 Conn. 619, 118 A. 47 (1922); *Sosanie v. Pernetti Holding Corp.*, 115 N.J.Super. 409, 279 A.2d 904 (App.Div.1971); *J. N. A. Realty Corp. v. Cross Bay Chelsea, Inc.*, 42 N.Y.2d 392, 366 N.E.2d 1313, 397 N.Y.S.2d 958 (1977); *Sy Jack Realty Co. v. Pergament Syosset Corp.*, 27 N.Y.2d 449, 267 N.E.2d 462, 318 N.Y.S.2d 720 (1971); *Jones v. Gianferante*, 305 N.Y. 135, 111 N.E.2d 419 (1953). We need not decide whether Pennsylvania adheres to this jurisprudential philosophy, however, since we conclude that the equitable considerations which appeared so compelling in the above decisions are absent in the case before us.

As regards the first consideration, the cause of the failure to give timely notice, the chancellor determined that the delay was the *sole* fault of Western and in no way attributable to SEPTA. The chancellor nonetheless concluded that this was a mistake which "occurred not from neglect or lack of diligence." Slip op. at 4. At the expense of appearing pedantic, we must disagree. Even those jurisdictions which recognize equitable exceptions to the rule that time is of the essence have rigorous standards for determining when such exceptions should operate.

> Anything short of the utmost good faith and diligence on the part of the party seeking to be relieved from the consequences of a failure to conform strictly to the terms of such contract will not be regarded as sufficient; but where it appears that *by the act of the other party,* or *by unavoidable accident of such character as could not be foreseen and guarded against,* the performance of the contract, with the exercise of due diligence was rendered impossible, and the other party at the earliest opportunity performed his part of the contract, the court will enforce it.

*Monihon v. Waklein*, 6 Ariz. 225, 234, 56 P. 735, 736–37 (1899) (emphasis added).

A heavy work load is not only foreseen by commercial entities such as Western but is also a state of affairs which such businesses strive to achieve. Thus, the fact that Western's "administrative oversight" was attributed to the workload with which it was faced at or about the date on which notice was required in no way shifts or lessens Western's responsibility for this error. Moreover, the term "negligence" itself includes carelessness, indifference, or *instances in which one fails to do that which is required.* Webster's New World Dictionary 952 (2d ed. 1980). Clearly, Western failed to do that which it was required to do in order to exercise the option. Thus, neither Western's failure to give timely notice nor its justification therefore evidence either the degree of diligence or the unavoidable circumstances necessary to justify even equitable intervention.[5] *See, e. g., Woodrum v. Pulliam,* Ky., 453 S.W.2d 263 (1970) (forgetfulness does not warrant intervention of equity); *Koch v. H. & S. Development Co.,* 249 Miss. 590, 163 So.2d 710 (1964) (equity will not relieve against forgetfulness and will never intervene where fraud, accident or mistake has not caused the failure to exercise an option); *McClellan v. Ashley,* 200 Va. 38, 104 S.E.2d 55 (1958) (negligence is not a favored ground for equitable relief).

With regard to the second consideration, we have already concluded that Western was not faced with a forfeiture of the improvements which it added to the premises in question, since SEPTA offered a new lease for a period equal to that available under the option which was not timely exercised. *See* note 3 *supra.* An argument that the option to renew was itself an investment to be forfeited absent the intervention of equity is, we believe, also unpersuasive. As Chief Justice Breitel noted in his dissenting opinion in *J. N. A. Realty Corp. v. Cross Bay Chelsea, Inc., supra,*

5. The powers of courts of equity may not be arbitrarily exercised to alter the terms of a contract understandingly made in order to relieve an unfortunate situation, caused solely by the negligent failure of the party seeking relief to observe its requirements.
*McClellan v. Ashley,* 200 Va. 38, 44, 104 S.E.2d 55, 59–60 (1958).

Considering investments in the premises or the renewal term a "forfeiture" as alone warranting equitable relief would undermine if not dissolve the general rule upon which there is agreement. For, it is difficult to imagine a dilatory commercial tenant, particularly one in litigation over a renewal, who would not or could not point . . . to some threatened investment in the premises, be it a physical improvement or the fact of goodwill. As a practical matter, *it is not unreasonable to expect the commercial tenant, as compared with his residential counterpart, to protect his business interests with meticulousness, a meticulousness to which he would hold his landlord. All he, or his lawyer, need do is red flag the date on which he has to act.*

42 N.Y.2d at 407, 366 N.E.2d at 1322, 397 N.Y.S.2d at 967 (Breitel, C. J., dissenting).

Appellee's final argument in this regard is that the delay neither mislead nor otherwise injured appellant and, therefore, that equitable relief is appropriate. We disagree. First, the absence of detriment to the optionor "cannot alone furnish a basis for equitable interposition." *F. B. Fountain Co. v. Stein*, 97 Conn. at 624, 118 A. at 49. Second, even if this were not the case, we cannot agree with appellee's assertion that appellant would suffer no harm were we to grant Western's request for equitable relief. "There is another side to the coin called equity . . . . The owner, the landlord, the lessor, the person who has lawfully acquired . . . the property is also entitled to consideration, and his rights deserve equal respect under our laws and our right of . . . ownership of property." *Koch v. H. & S. Development Co.*, 249 Miss. 590, 629, 163 So.2d 710, 727. In exchange for various commitments from Western, SEPTA agreed that Western could renew the lease for an additional ten year period at the same rental rate that was competitive ten years previous. If Western had exercised the option, we have no doubt that Western would urge us to strictly enforce the agreement should SEPTA thereafter ask equity to relieve it from an improvident agreement, deemed so in light of current rental receipts received on similar premises.

Thus, because it is the optionor alone who is bound by the agreement until the date on which it is exercised, we think that fairness militates against demanding more from the optionor than he lawfully agreed to give and instead obligates us to strictly enforce the agreement to insure that neither party is prejudiced by a judicially authored revision of the agreement.[6]

■ Instantly, Western and SEPTA agreed that the "option . . . [would] expire absolutely, and . . . the lease [would] cease and determine at the expiration of the original ten year term," Record at 11a, *unless* Western notified SEPTA of its desire to exercise the option on or before January 16, 1976. It cannot be gainsaid that this provision clearly apprised Western that time was of the essence.[7] Thus, since, the parties themselves agreed both that performance was to occur on or before some specific date and that time was of the essence, the agreement must be enforced. *See, e. g., McHenry v. Mitchell,* 219 Pa. 297, 301–02, 68 A. 729, 731 (1908). *See Knable v. Bradley,* 430 Pa. 153, 242 A.2d 224 (1968); *New Eastwick Corporation v. Philadelphia Builders, supra; Morrell v. Broadbent,* 291 Pa. 503, 140 A. 500 (1928);

6. "[T]he essence of contract law is the intent of the parties and where there has been no allegation of mistake, fraud, overreaching, or the like, it is not the function of the court to redraft the agreement more favorable [sic] to a given party than that which he chose to enter into." *Harris v. Dawson,* 479 Pa. 463, 468, 388 A.2d 748, 750 (1978). *See, e. g., Children's Hospital of Philadelphia v. American Arbitration Association,* 231 Pa.Super. 230, 331 A.2d 848 (1974). When an option is being construed, moreover, a court is obliged to strictly interpret the provision in favor of the party bound by the option, the optionor, and against the party who is not so bound, the optionee. *West Penn Realty Co. v. Acme Markets, Inc.,* 224 Pa.Super. 202, 205, 303 A.2d 836, 837 (1973) (per curiam).

7. In its counterstatement of the case, appellee states that: "The lease does not contain the frequently—seen clause that time is of the essence." Brief for Appellee at 2. Since appellee neither does nor could seriously contend that it was unaware that time was of the essence and because the timely notice clause made it unequivocally clear that time was, indeed, of the essence, we need simply point out that the phrase "time is of the essence" is unnecessary if the intention of the parties that it be so is clear. *See Tolan v. O'Malley,* 450 Pa. 214, 217–18, 299 A.2d 229, 230 (1973); *L. C. S. Colliery, Inc. v. Globe Coal Co.,* 369 Pa. 1, 84 A.2d 776 (1951).

*Bogojavlensky v. Logan*, 181 Pa.Super. 312, 124 A.2d 412 (1956).

Accordingly, we reverse the order granting summary judgment to appellee, vacate that judgment and direct the entry of judgment for appellant.

CERCONE, P. J., files a dissenting opinion in which BROSKY, J., joins.

CERCONE, P. J., dissenting:

There are times when it is necessary to find, along the mainstream of the law, an alcove, a haven where the waters do not rush so precipitately, a dry dock where a seafaring litigant can steer his vessel and find leave to repair the damages sustained while on the high seas of generally accepted jurisprudential precepts. The instant case is an example of the occasion when a litigant should be rescued from the rough and roiling waters of general law and receive the benefit of the more beneficial and caressing laws of equity.

The primary question presented in this case is whether it is both consonant with existing Pennsylvania law and equitable doctrine, that a tenant in *all cases* has *no equitable right* to renew a lease if notice to renew is not given in strict compliance with the provisions in a lease. The majority reasons that a lessee, under the circumstances of this case, has no such equitable right, and accordingly, reverses the chancellor's determination that equity is warranted in granting relief to a tenant who admittedly failed to give timely notice. Since we conclude under existing Pennsylvania law equity has both the authority and power to grant the requested relief, we dissent.

I.

The majority relates that the rule in Pennsylvania is that punctual notice is of the essence in renewal options, and the right to renewal is irretrievably lost if notice is not provided within the specified time. A reading of prior cases reveals that "exceptions" are acknowledged, but that our courts have neither had an opportunity to articulate them, nor to

announce the equitable principles or factors which would support granting them in particular adjudications.

## A.

The case of *Murtland v. English*, 214 Pa. 325, 329–30, 63 A. 882, 883, (1906), stands for the narrow proposition that merely remaining in possession of leased premises *without ever giving any notice* or paying an increased rent does not evidence a renewal. The rationale of this rule is that strict compliance with the terms of an option is necessary where the lessee gives no indication other than his holding over that he intends to exercise and be bound by the option to renew. Under those circumstances, both courts of law and equity have been sympathetic to the plight of the lessor, *i. e.*, the lessor would in effect be bound by the option while the lessee is free to accept or reject.[1] *Id.*, 214 Pa. at 330, 63 A. at 883.

*Rhodes v. Good*, 271 Pa. 117, 121, 114 A. 494, 495 (1921) involved an agreement to repurchase land. In affirming a lower court judgment in favor of the lessor, the court gratuitously considered the agreement as an option to repurchase. Consistent with *Murtland*, the court reasoned that if the agreement were so construed, it expired by its own terms as the lessee *never* expressed any intention to accept the option, late or otherwise. *Good*, 271 Pa. at 121, 114 A. at 495.

*Warner v. Bedell Co.*, 278 Pa. 576, 123 A. 490 (1924) (per curiam) is perhaps the most closely analogous to the present case. *Bedell* addressed the question whether delivery of written notice to cancel the lessee's right to renew was

1. This principle is apparent in decisions from other jurisdictions as well; *see, e. g., United States v. 70.39 Acres of Land*, 164 F.Supp. 451, 468 (D.C.Cal.1958); *Cicinelli v. Iwasaki*, 170 Cal.App.2d 58, 66, 338 P.2d 1005, 1010 (D.Ct.App.1959); *McClellan v. Ashley*, 200 Va. 38, 41, 104 S.E.2d 55, 59 (1958).

We also discern that this rationale would not apply in a case like the present. The lessor can make no claim, as it did not in this appeal, that it had any justifiable or reasonable expectation that the lessee did not attempt to exercise the right to renew and be bound thereby. *See, Sosani v. Pernetti Holding Corp.*, 115 N.J.Super. 409, 415, 279 A.2d 904, 908 (1971).

properly exercised where notice was served on the lessee one day late. The court, in upholding an injunction against ejectment proceedings brought by the lessor, explained:

> "*Ordinarily*, the possessor of such a right must exercise it on the day, or within the time, specified . . ., *and nothing sufficient to take this case out of the general rule has been shown.*" *Id.* at 578–79, 123 A. at 490–91 (citations omitted) (emphasis added).[2]

The court, therefore, in applying the general rule, significantly inferred that exceptions to this rule do exist,[3] although the opinion gave no further guidance on the factors which would entitle a lessee to relief. The inference drawn in *Bedell, supra,* strongly points to a conclusion that equitable principles are material and relevant in lessor-lessee option controversies. At this juncture, inquiry properly shifts into ascertaining which factors will be deemed determinative in deciding whether a lessee has an equitable right to relief, and further, whether as a matter of law the lessee made such a showing in this case.

## II.

In the instant case, the Chancellor below was of the opinion that *American House, Inc. v. Schneider,* 211 F.2d 881 (3d Cr. 1954) provided guidance as to what factors a court of equity might consider in determining whether a tenant has

**2.** In this appeal, it is not necessary to reach the question whether or not there are commonsense differentiations between options to repurchase, purchase, renew, or cancel such that different rules and results may be applicable when the lessee or lessor fails to give timely notice in these settings. Suffice it to say, that to this writer there is no apparent reason, nor has the defendant-lessor offered any, why the rule applicable to options to cancel a leasehold is or should be different than that applicable to options to renew.

**3.** *See* Sum.Pa.Jur. *Landlord & Tenant,* § 281 (1956) (recognizing that equity will grant relief to a lessee who fails to give timely notice, which notice is a condition precedent to renewal, where the failure is attributable to fraud, accident, surprise, mistake, or where there are other special circumstances which warrant a court of equity's action). *See generally,* J. W. Pomeroy, A Treatise on Equity Jurisprudence, § 453(b) (5th ed. 1941); 50 Am.Jur.2d *Landlord & Tenant,* § 1187–88 ( Supp. 19 ), *Annot.,* 44 A.L.R.2d 1359 ( ) (collecting cases on various aspects of the general rule).

established the existence of an equitable interest and a right worthy of protection.[4] Circuit Judge Hastie, authored the well-reasoned and cogent *Schneider* opinion. *Schneider* held that "sound and salutary equity doctrine and practice," requires a federal court "in real hardship cases to allow a renewal despite slight, relatively inconsequential and excusable tardiness." The court identified three considerations as paramount to its holding. Those considerations were:

"(1) the nature of the mistake on the lessee's part which led to the delay, (2) the hardship which would result to the lessee should the lease be terminated, and (3) whether the lessor has had a change in position based upon his reliance on the fact that the lessee did not exercise his option to renew within the required time."[5] *Id.* at 1357–58.

Armed with these criteria of decision, the Chancellor found relative to the first factor that the delay in sending

4. Appellant correctly points out in its brief *Schneider* is not binding precedent on this court. In *Schneider*, the court applied federal common law in determining the rights of the parties to the lease, *id.* at 882–883, and only inferred from its reading of *White v. Long*, 289 Pa. 525, 137 A. 673 (1927) that Pennsylvania courts would grant relief on similar facts. *Id.*

Additionally, although our Supreme Court has not specifically endorsed the analysis adopted in *Schneider*, we agree with the Chancellor's view that *Schneider* provides workable and fair guidelines as regards the question whether or not special circumstances exist within the meaning of *Bedell, supra*.

Moreover, a judgment acknowledging equity's broad powers to prevent rigid rules of law from working often unnecessary hardships on the parties to a lease is more in accord with equity's traditional rule in our jurisprudence. As the late Justice Musmanno pertinently observed:

"Equity can travel in any direction to achieve its objective of truth, and when it has found truth it can land on terrain which often would be utterly futile and unapproachable to formalistic law. And on that terrain of ascertained fact, equity surveys the whole situation and grants the relief which justice and good conscience dictate."

*Weissman v. Weissman*, 384 Pa. 480, 485, 121 A.2d 100, 103 (1956).

5. This list of factors is not all inclusive. For instance, also material and relevant is whether severe hardship would result to the lessor in compelling him to accept the option at the prior rental rate, when due to factors other than improvements made solely by the lessee, the rental value of the property itself has substantially increased, or the costs associated with a lessor's duty of maintaining the property

notice to the lessor, which was only four days or two business days,[6] was not due merely to forgetfulness[7] or gross neglect[8] on the part of the lessee. On the contrary, the delay being unquestionably slight and attributable to a complicated expansion program which precipitated a hectic time in the lessee's offices, the Chancellor determined the equities weighed in favor of the lessee as to the first consideration.

Regarding the second factor, the Chancellor found that the lessee would suffer harm if it were not permitted to exercise the option. Specifically, the lessee would be deprived of a valuable business interest in the location of the property[9] as well as the benefit of an $84,000.00 investment

has increased, *i. e.*, utilities, taxes, etc. Of course, in determining whether relief should be granted all evidence is admissible which tends to prove that the equity's in favor of compelling acceptance, outweigh any hardship which might result to the lessor. *See, F. B. Fountain Co. v. Stein*, 97 Conn. 619, 118 A. 47 (1922).

6. The delay *in receiving* notice was only six days or four business days.

7. *Compare Marjer v. Layfmen*, 140 N.J.Eq. 68, 53 A.2d 187 (1947) (mere forgetfulness will not entitle tenant to relief), and *Xanthakey v. Hayes*, 107 Conn. 459, 140 A. 808 (1922) (mere forgetfulness where other factors are present might not foreclose relief).

8. All cases are in accord that relief should be denied when failure to notify results from willful or gross negligence. *See, e. g., Jones v. Gibbs*, 133 Tex. 627, 130 S.W.2d 264 (1939); *Beckow v. Hammer*, 189 Va. 489, 53 S.E.2d 1 (1949).

9. Initially, we observe that "locational goodwill" is certainly not the only property interest which equity will or should protect in cases such as the present. Rather, the interest which equity deems worthy of protection is "a valuable interest in . . . property." *See Application of Topp*, 81 N.Y.S.2d 344 (Sup.Ct.1948). The Chancellor's finding of loss of a valuable interest is supported by the deposition testimony of Mr. H.C. Randolph, Jr., Assistant Vice President of the lessee-bank. Mr. Randolph related:

"This was our busiest branch, transaction—volume wise, and it's got a substantial deposit liability in the branch and we didn't want to do anything that was going to jeopardize losing that particular location."

Appellant's Reproduced Record at 41a.

it made in improving the property.[10]   The Chancellor also concluded the third factor weighed in the lessee's favor. The lessor unequivocally related it did not enter into any agreement for the leasing of the premises, nor did it take any other detrimental action based upon the lessee's failure to give notice in accordance with the date in the lease. Based on these findings, the Chancellor granted the lessee's motion for summary judgment and entered an order compelling the landlord to accept the lessee's exercise of its option.

a.

While we disagree with the majority's substantive conclusion that the lessee failed to establish a triable case as to entitlement to equitable relief, we are, however, of the opinion that summary judgment in favor of the lessee was not appropriate on this record.   Summary judgment is proper only in the "clearest of cases," *see, e. g., Kotasinski v. Rasner*, 436 Pa. 32, 258 A.2d 865 (1969);  *Prince v. Pavoni*, 225 Pa.Super. 286, 392 A.2d 452 (1973) in which there are no genuine issues of material fact.   Having reviewed the evi-

Nor do we find persuasive the majority's analysis of the potential hardship which would result to the lessee from the loss of the option to renew.   The mere fact the improvements to the property become the property of the lessor at the end of the term does not inescapably lead to the conclusion that no loss of a valuable property interest occurs.   While the record does not disclose the method of federal income tax reporting by the lessee, it is quite conceivable that the loss of depreciation deductions based on the increased useful life of the building will have an adverse economic impact on the lessee's investment.   Also, in view of the record testimony it is quite clear that the loss of use of the building itself constitutes some hardship to the lessee.

10.   Expenses incurred in making improvements to a leasehold has been a significant factor in some cases which have recognized an equitable right to renew despite failure to give timely notice.   *See, e. g., Schneider*, 211 F.2d at 1358;  *Galvin v. Simons*, 128 Conn. 616, 25 A.2d 64 (1942);  *Deane v. Mitchell*, 312 Ky. 389, 227 S.W.2d 893 (1950);  *Application of Topp, supra.*   However, the mere fact that such improvements have been made has been held not to be determinative in and of itself.   *See, e. g., Rounds v. Owensboro Ferry Co.*, 253 Ky. 301, 69 S.W.2d 350 (1934);  *Medomak Canning Co. v. York*, 143 Me. 190, 57 A.2d 745 (1948);  *I. X. L. Furniture & C. Installment House v. Besets*, 32 Utah 454, 91 Pa. 279 (1907).

dence in the light most favorable to the appellant-lessor, we are convinced that disputed questions do exist. In this procedural posture, equity and good conscience dictate a full and fair trial be had for the question of relief to be definitively settled. *See, e. g., McGovern v. Spear*, 463 Pa. 269, 272, 344 A.2d 826, 827 (1975); *Marchese v. Marchese*, 457 Pa. 625, 629, 326 A.2d 321, 323 (1974). However, we do not mean to suggest that summary judgment is never appropriate in cases like the present. Rather, there might arise causes where for various reasons summary judgment is particularly fitting. *Cf. B–Automotive Co. v. Harrison*, 443 Pa. 360, 362–63, 278 A.2d 890, 891 (1971) (attempted exercise of option approximately four years after it became exercisable—not timely).[11]

The new proceedings should include testimony on: (1) the precise nature and extent of monetary loss to the lessee regarding its improvements to the property if forced to relocate; (2) the hardship to the lessor, if forced to accept the option at the original rental, *i. e.*, have utilities, taxes or other expenses associated with ownership and maintenance of the property substantially increased such that continued payment of the original rental fee would clearly outweigh the degree of financial hardship to the lessee if forced to vacate. *See, 5629 Corporation v. Ideal Lighting Fixtures Co.*, 538 S.W.2d 139, 141 (Tex.Civ.Ct.App.1976), and (3) the extent to which the lessee's improvements to the land have increased the rental value and useful life of the lease hold. *See Application of Topp*, 81 N.Y.S.2d 344, 346 (Sup.Ct.1948).

Accordingly, I would reverse the judgment of the lower court and remand for a trial on the above matters.

BROSKY, J., joins in this opinion.

11. *See also*, cases cited in n. 9 *supra*.