**NATIONAL DATA PAYMENT SYSTEMS, INC., a New York corporation, Plaintiff,**

v.

**MERIDIAN BANK a Pennsylvania corporation and Corestates Financial Corporation, a Delaware corporation, Defendants.**

No. Civ.A. 97–6724.

United States District Court, E.D. Pennsylvania.

Sept. 22, 1998.

---

Robert N. Feltoon, Steven Pachman, Conrad O'Brien Gellman & Rohn, Philadelphia, PA, for Plaintiff.

G. Thompson Bell, III, Matthew W. Rappleye, Reading, PA, for Defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 on all counts of Plaintiff's complaint and Plaintiff's Motion for Partial Summary Judgment as to liability only for counts I, III, and V of Plaintiff's complaint. For the following reasons Defendants' Motion is granted and Plaintiff's Motion is denied.

## BACKGROUND

Plaintiff, National Data Payment Systems ("NDPS" or "Plaintiff"), entered into a Purchase Agreement (the "Agreement") with Defendant, Meridian Bank ("Meridian"), on September 15, 1995 for the purchase of Meridian's merchant credit card business. The Agreement did not include a specific date for closing, other than indicating that the closing should occur "on the date to be mutually agreed upon by the parties which shall be within thirty (30) days after the expiration or termination of any applicable waiting period under the Hart–Scott–Rodino Antitrust Improvements Act of 1976." (Agreement at 3.1). However, the Agreement did include a termination provision stating that "[t]his Agreement may be terminated by either Meridian or NDPS and shall be of no further force and effect (subject to (a) and (b) below) . . . (b) in the event the Closing shall not have occurred by October 30, 1995." (Agreement at 11.1). The Agreement also provided that if either party terminated the Agreement according to the termination provision in section 11.1 that there would be no "liability of any kind." (Agreement at 11.2(a)). Another provision of the contract provided that the Agreement "shall not be amended, modified or waived in any fashion except by an instrument in writing signed by the parties hereto." (Agreement at 15.8).

The parties did not close the transaction by October 30, 1995, the date in the termination provision. However, the parties remained in contact up to and after October 30.[1]

On October 30, 1995, a Meridian representative called NDPS to ascertain "where NDPS was" in the decision making process. The NDPS representative responded that NDPS would get back to Meridian later in the day on October 30 or on October 31, 1995, to which the Meridian representative responded "fine." On November 2 and November 3, 1995, representatives of Meridian and NDPS had further telephone conversations concerning whether NDPS was going to close the transaction. During these conversations, Meridian stated its position that it

1. On October 10, 1995, Defendant Corestates ("Corestates") and Defendant Meridian entered into an Agreement and Plan of Merger. The merger became final in April of 1996.

could terminate the Agreement if it so chose given the passing of October 30, 1995 and section 11.1 of the Agreement. Sometime after the last phone conversation between the parties on November 3, NDPS sent a letter to Meridian indicating its intent to close the transaction and its belief that Meridian had agreed to close the transaction on November 7, 1995. On November 6, 1995, Meridian sent NDPS a letter indicating that it was exercising the termination option in section 11.1 of the Agreement. After receipt of the November 6, 1995, letter from Meridian and after the passing of the alleged closing time agreed to by the parties on November 7, 1995, NDPS sent a letter to Meridian indicating its belief that Meridian had breached the Agreement by not closing the transaction.

NDPS first filed a breach of contract action in the District Court in Georgia which was dismissed for lack of jurisdiction. In October of 1997, NDPS filed the current action. This action is governed by Pennsylvania law in accordance with the express intention of the parties. *See* (Agreement at 15.11).

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, reveal no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Our responsibility is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The presence of "a mere scintilla of evidence" in the nonmovant's favor will not avoid summary judgment. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505). Rather, we will grant summary judgment unless "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256, 106 S.Ct. 2505. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

### II. *The Termination Provision*

■ Both parties seek summary judgment concerning the termination provision of the Agreement which provides that the Agreement "may be terminated by either Meridian or NDPS and shall be of no further force and effect . . . (b) in the event the Closing shall not have occurred by October 30, 1995." (Agreement at 11.1).

By letter dated November 6, 1995, Meridian informed NDPS that it was exercising this termination option. Meridian, therefore, seeks summary judgment on Plaintiff's breach of contract claims arguing that the contractual language is clear and unambiguous and that it was within its rights under the contract when it terminated the Agreement. Meridian further argues that because it terminated the Agreement in accordance with the express termination provision in the contract it cannot be liable for damages as the contract provides that "[u]pon any termination pursuant to Section 11.1 above, neither NDPS nor Meridian shall have any liability of any kind arising out of this Agreement." (Agreement 11.2(a)); *see* (Def.s' Mem. at 15–20, 24–25 and Def.s' Resp. at 14–21).[2]

---

**2.** "Def.s' Mem." refers to Defendants' Memorandum of Law in support of their Motion for Summary Judgment and "Def.s' Resp." refers to Defendants' Response to Plaintiff's Motion for Partial Summary Judgment. Likewise, "Pl.'s Mem." refers to Plaintiff's Memorandum of Law in support of its Motion for Partial Summary Judgment and "Pl.'s Resp." refers to Plaintiff's Memorandum of Law in Response to Defendant's Motion for Summary Judgment.

Plaintiff argues that the termination provision of the contract is not effective because the course of dealing among the parties shows that time was not of the essence in this contract. Plaintiff, however, does not argue that the contractual language is ambiguous or unclear. Rather, Plaintiff argues that, notwithstanding the language in the termination provision of the Agreement, it was unaware that Meridian intended the deal to be closed by October 30, 1995 or that Meridian would exercise the termination option if the transaction had not closed by October 30, 1995. *See* (Pl.'s Mem. at 27–40 and Pl.'s Resp. at 1–12).

Under Pennsylvania law, " '[i]t is firmly settled that the intent of the parties to a written contract is contained in the writing itself.' " *Duquesne Light Co. v. Westinghouse Electric Corp.*, 66 F.3d 604, 613 (3d Cir.1995) (quoting *Samuel Rappaport Family Partnership v. Meridian Bank*, 441 Pa.Super. 194, 657 A.2d 17, 21 (Pa.Super.1995) (internal citations omitted)); *see also Kiewit Eastern Co., Inc. v. L & R Construction Co., Inc.*, 44 F.3d 1194, 1199 (3d Cir.1995) (" '[w]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed.' " (quoting *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659, 661 (1982) (internal citations omitted))). Whether contract provisions are clear or ambiguous is a question of law. *See Kiewit Eastern*, 44 F.3d at 1199 (citing *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385, 390 (1986)). "A contract is ambiguous only 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.' " *Ransom F. Shoup & Co., Inc. v. Veeder–Root Co.*, No. CIV.A.92–4939, 1997 WL 786982, at *2 (E.D.Pa. Nov.28, 1997) (quoting *12th Street Gym, Inc. v. General Star Indemnity Co.*, 93 F.3d 1158, 1165 (3d Cir.1996) (internal citations omitted)). Further, "[t]ime is of the essence of a contract if it is specifically so provided." *2101 Allegheny Associates v. Cox Home Video, Inc.*, No.

CIV.A.91–2743, 1991 WL 225008, at *7 (E.D.Pa. Oct.29, 1991), *aff'd*, 975 F.2d 1552 (3d Cir.1992).

We find that the termination provision of the contract is a clear and unambiguous expression of the intent of the parties to give both sides the ability to terminate the contract in the event the closing was not completed by October 30, 1995.[3] *See* (Agreement at 11.1). Moreover, we do not find there to be any inconsistency between the section of the Agreement allowing for termination and the section of the Agreement dealing with closing. *See* (Agreement at 11.1 and 3.1).

Therefore, we find that Meridian was fully within its rights under the contract when it terminated the contract on November 6, 1995. Thus, according to the express terms of the contract, Meridian cannot be held liable for damages due to their termination. *See* (Agreement at 11.2(a)).

### III. Implied Waiver

NDPS argues that Meridian's conduct in a telephone discussion on October 30, 1995, constituted an implied waiver of the termination provision. A Meridian representative called NDPS on October 30, 1995, to determine where NDPS was in the decision making process. The NDPS representative responded that NDPS would get back to Meridian later in the day on October 30 or on October 31, 1995, to which the Meridian representative responded "fine." NDPS argues that Meridian's indication that it was "fine" for NDPS to respond on October 31, 1995 constituted an implied waiver of the termination provision by Meridian. *See* (Pl.'s Mem. at 40–43 and Pl.'s Resp. at 12–22).

Meridian responds by again pointing to the express language of the contract which contains a no-oral waiver clause providing that the Agreement "shall not be amended, modified or waived in any fashion except by an instrument in writing signed by the parties

---

**3.** Both parties to this contract are sophisticated business entities with experience in such transactions. Further, both parties were represented by counsel throughout negotiations to create this contract, and the Agreement went through several drafts, all of which included some termination provision.

hereto. No delay on the part of any party hereto in exercising any right, power or privilege hereunder shall operate as a waiver thereof." (Agreement at 15.8). Meridian claims that this no-oral waiver clause prevents Plaintiff from arguing that Meridian waived the termination provision by stating "fine" in response to NDPS's desire to get back to Meridian on October 30 or 31. *See* (Def.s' Mem. at 20–24 and Def.s' Resp. at 23–27).

Plaintiff responds that it is not arguing that there was an express waiver that would implicate the no-oral waiver provision of the contract. Rather, relying on the Pennsylvania Supreme Court case of *Cohn v. Weiss*, 356 Pa. 78, 51 A.2d 740 (1947), Plaintiff argues that the conduct of Meridian in stating that it was "fine" for NDPS to respond on October 31 should work to equitably estop Meridian from exercising the termination rights under the contract.

We find that the express language of the contract clearly and unequivocally indicates the intention of the parties that there be no modifications or waivers of the contract provisions except in a writing signed by both parties. *See* (Agreement at 15.8). The parties even provided that delay in exercising rights under the contract would not constitute a waiver of those rights. *Id.* Thus, on the facts before us, there could be no express waiver of the termination provision of the contract.

Moreover, "[i]t is well settled under Pennsylvania law that the doctrine of implied waiver 'applies only to situations involving circumstances equivalent to an estoppel, and the person claiming the waiver to prevail must show that he was misled and prejudiced thereby.'" *2101 Allegheny*, 1991 WL 225008 at *9 (quoting *Consolidated Rail Corp. v. Delaware & H.R. Co.*, 569 F.Supp. 26, 29–30 (E.D.Pa.1983)); *see also Brown v. City of Pittsburgh*, 409 Pa. 357, 186 A.2d 399, 401 (1962). Further, "'[a]s a general rule, mere silence or inaction is not a ground for estop-

pel unless there is a duty to speak or act.'" *2101 Allegheny*, 1991 WL 225008 at *10 (quoting *Farmers Trust Co. v. Bomberger*, 362 Pa.Super. 92, 523 A.2d 790, 794 (1987) (internal citations omitted)); *see also New Eastwick Corp. v. Philadelphia Builders Eastwick Corp.*, 430 Pa. 46, 241 A.2d 766, 769 (1968) (finding no duty of one party to inform the other that it would act in accordance with the contract and distinguishing *Cohn v. Weiss*). "The plaintiff has the burden of showing the existence of an implied waiver." *2101 Allegheny*, 1991 WL 225008 at *9.

Plaintiff vigorously argues that *Cohn v. Weiss* is directly on point and dictates that this Court apply the doctrine of implied waiver or equitable estoppel to prevent Meridian from claiming protection under the termination provision. *Cohn v. Weiss* involved a contract for the sale of property. 356 Pa. 78, 51 A.2d 740 (1947). The contract in *Cohn* had a termination provision similar to the one in the instant case. *Id.* at 741. The buyer of the property called the seller on the termination date and attempted to set a closing date for three days after the termination date. *Id.* The seller would not respond to the buyer's request, but instead delayed decision making until the next day in an intentional effort to terminate the contract under the termination provision. *Id.* The Pennsylvania Supreme Court in *Cohn* refused to uphold the termination provision because the conduct of the seller in both intentionally refusing to agree to set a date for closing when the buyer called on the termination date so that he could take advantage of the termination provision and his deceit in using his son's illness to induce the buyer to believe that his mind was not on the transaction served "'as a trap' to put the purchaser 'off his guard.'" *Id.* at 743.

This is not a case like *Cohn* where the purchaser indicated a willingness to close on the termination date and the seller intentionally delayed agreeing to and confirming the closing date in an effort to utilize the termination provision.[4] Instead, even though

---

4. This is so notwithstanding the fact that Meridian acknowledged that its options increased after the passing of the termination date and Meridian's acknowledgment that it intentionally did not

mention the termination provision in the phone conversation on October 30, 1995. *See 2101 Allegheny*, 1991 WL 225008 at *10; *see also New Eastwick Corp.*, 241 A.2d at 769 (finding no duty

NDPS argues it was induced to think it was "fine" if it responded to Meridian on October 30 or 31, the facts show that NDPS did not respond on either day. In fact, as of November 2 and for most of the day on November 3, 1995, NDPS still had not expressed a desire to close the transaction. *See 2101 Allegheny*, 1991 WL 225008 at *9 (to prevail on implied waiver claim "moving party must show that it was prejudiced because the promise caused it to change its position"); *see also Brown*, 186 A.2d at 401.

Because Meridian did not have an affirmative duty to let NDPS know that October 30, 1995 was the termination date, and because NDPS has not produced any evidence to demonstrate that it justifiably relied on Meridian's utterance that it was "fine" to respond by October 31, we find no facts which warrant application of implied waiver or equitable estoppel. *See 2101 Allegheny*, 1991 WL 225008 at *9 and *10; *see also New Eastwick Corp.*, 241 A.2d at 769. Therefore, Defendants' motion for summary judgment on counts I, II, III, and IV of Plaintiff's complaint is granted and Plaintiff's cross motion for summary judgment is denied.

### IV. Tortious Interference with Existing Contractual Relations

Defendant Corestates seeks summary judgment on Plaintiff's tortious interference with contractual relations claim in count V of Plaintiff's complaint. Corestates argues that any influence they may have had on Meridian's decision to terminate the agreement was privileged given Corestates' financial interest in Meridian after the announcement on October 10, 1995 of the merger/acquisition.

 " 'The tort of inducing breach of contract or refusal to deal is defined as inducing or otherwise causing a third person not to perform a contract with another, or not to enter into or continue a business relation with another, without privilege to do so.' " *Mercier v. ICH Corp.*, No. CIV.A.87–3855, 1990 WL 107325, at *5 (E.D.Pa. July 25, 1990) (quoting *Glazer v. Chandler*, 414 Pa. 304, 200 A.2d 416, 418 (1964) (citing

of one party to inform the other that it would act in accordance with the contract and distinguish-

Restatement of Torts § 766 (1939)). In order to establish a claim, a plaintiff must prove:

(1) there is an existing contractual relationship between the plaintiff and a third party; (2) the defendant interfered with the performance of that contract by inducing a breach or otherwise causing the third party not to perform; (3) the defendant was not privileged to act in this manner; and (4) the plaintiff suffered pecuniary loss as a result of the breach of contract.

*Salisbury House, Inc. v. McDermott*, No. CIV.A.96–6486, 1998 WL 195693, at *13 (E.D.Pa. Mar.24, 1998) (quoting *Al Hamilton Contracting Co. v. Cowder*, 434 Pa.Super. 491, 644 A.2d 188, 191 (1994)).

 In determining whether a party's conduct in interfering with the contract is improper, the following factors should be considered:

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference and

(g) the relation between the parties.

Restatement (Second) of Torts § 767 (1977).

 In applying these factors to Corestates' conduct and in consideration of the Merger Agreement entered into between Corestates and Meridian on October 10, 1995, we find Corestates was privileged to influence Meridian's contract with NDPS. *See Mercier*, 1990 WL 107325 at *5 ("As a prospective purchaser of that subsidiary of the contracting party, ICH had a sufficient financial interest in the business of Tenneco to make its interference proper, not tortious."). Therefore, Defendants' motion for

ing *Cohn v. Weiss* ).

summary judgment is granted as to Plaintiff's tortious interference with contractual relationship claim and Plaintiff's cross motion for summary judgment is denied.

## CONCLUSION

An appropriate Order follows.

## ORDER

AND NOW, this 22nd day of September, 1998, upon consideration of Defendants' Motion for Summary Judgment and Plaintiff's Cross Motion for Partial Summary Judgment as to liability only for Counts I, III, and V, as well as the responses and supplemental responses of the parties, and in accordance with the foregoing Memorandum, it is hereby ORDERED as follows:

1) Defendants' Motion for Summary Judgment is GRANTED in its entirety;

2) Plaintiff's Cross Motion for Partial Summary Judgment is DENIED.