J-A04039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GLOMAR HOLDING, L.P., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| EASTERN METAL RECYCLING-TERMINAL, LLC, | |
| Appellee | No. 1939 EDA 2016 |

Appeal from the Order May 25, 2016
in the Court of Common Pleas of Delaware County
Civil Division at No.: 15-10942

BEFORE: SHOGAN, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.: **FILED MAY 08, 2017**

Appellant, Glomar Holding, L.P., appeals from the order sustaining the preliminary objections in the nature of a demurrer of Appellee, Eastern Metal Recycling-Terminal, L.L.C., and dismissing Appellant's amended complaint with prejudice. We affirm.

We take the following background from our independent review of the certified record. On April 18, 2013, Appellee entered into a due diligence and option agreement (the Option Agreement) with Eddystone Rail Company, LLC (Eddystone), that granted Eddystone exclusive rights to conduct due diligence of the property (Property) and the option to purchase

_____

[*] Retired Senior Judge assigned to the Superior Court.

it. On March 26, 2015, Eddystone assigned its rights under the Option Agreement to Canopy Prospecting, Inc. (Canopy). On March 31, April 28, and May 27, 2015, pursuant to the Option Agreement's terms, Canopy made payments to Appellee to extend the deadline for exercising the option to purchase the Property. The option deadline was continued to July 15, 2015, with any other extension required to be submitted fifteen days prior. However, only one day before, on July 14, 2015, Canopy assigned its rights, title and interest in the Option Agreement to Appellant. The same day, although it had conducted no due diligence, Appellant sent Appellee a letter exercising its option to purchase the Property pursuant to the Option Agreement's terms. Pursuant to section 6(d) of the Option Agreement, the closing was to occur not less than sixty nor more than ninety days after the option's exercise, unless otherwise agreed to by the parties. (**See** Amended Complaint, Exhibit A, Due Diligence and Option Agreement, at unnumbered page 4 ¶ 6(d)). Section 14 of the Option Agreement stated that "**[t]ime is of the essence as to the performance of all of the terms and conditions of this Agreement**." (**Id.** at unnumbered page 8 ¶ 14) (emphasis added).

The new closing date was scheduled for October 15, 2015. On or about October 11, 2015, Appellant became aware of damage and vandalism on the Property that had been the subject of police reports. On October 14, 2015, Appellant notified Appellee that it intended to proceed with closing in

spite of the on-going casualty, but subject to a purchase price adjustment consistent with the Option Agreement's terms. Appellant requested an extension of the closing date for an insurance adjuster to assess the damage cost. Appellee granted Appellant a thirty-day extension, and set a new closing date for November 13, 2015. Appellee memorialized the extension in a letter to Appellant that stated, in pertinent part:

> . . . in the interest of avoiding unnecessary disputes, [Appellee] has agreed to provide an extension of the closing date for the purchase and sale of the Property, which closing date shall occur on or before November 13, 2015, **time being of the essence with respect thereto. [Appellee] shall not extend the closing date beyond November 13, 2015 for any reason.**

(Preliminary Objections to Amended Complaint, at Exhibit B, Modification Letter, 10/14/15).

On October 20, 2015, Appellant identified Michael Simpson, of Sphere Risk Partners, as the insurance adjuster, and Appellee agreed to him on October 26, 2015. Mr. Simpson inspected the Property on October 29 and 30, 2015. On November 12, 2015, Mr. Simpson provided a preliminary estimate of repair costs of at least seven to fifteen million dollars, and stated that he required a minimum of four more weeks to complete his review. (*See* Amended Complaint, at Exhibit F, Simpson Letter, 11/12/15).

On November 13, 2015, Appellant appeared at closing, and advised that it was willing to proceed with the purchase, but requested that Appellee either provide it with a credit toward the purchase price pursuant to the preliminary extimate, or grant an extension to allow Mr. Simpson time to

complete the inspection. Appellee offered a credit on the purchase price at the capped amount of $100,000.00, and denied a request for another extension to complete the evaluation, on the ground that such is not an appropriate remedy under section 6(d) of the Option Agreement. Thereafter, believing Appellant to be in default, with no further contractual rights, Appellee continued to market the Property to other prospective buyers.

On January 11, 2016, Appellant filed a complaint against Appellee for breach of contract, specific performance, and a declaratory judgment on the basis of Appellee's alleged failure to keep the Property secure and avoid waste and to extend the closing date to allow further inspection. Appellant also filed a praecipe to index a *lis pendens* on the Property, and a motion to compel Appellee to allow Mr. Simpson to perform a further inspection.

On February 1, 2016, Appellee filed a response to the motion to compel and preliminary objections to the complaint on the bases of (1) Appellant's lack of standing for its failure to attach either a copy of the actual assignment from Eddystone to Canopy or the agreement to extend the closing date to November 13, 2015, and (2) Appellant's failure to state a claim on which relief could be granted because Appellee was under no duty to extend the closing date again where time was of the essence. (*See* Appellee's Preliminary Objections to Appellant's Complaint, 2/01/16, at 6-15).

- 4 -

On February 22, 2016, Appellant filed an amended complaint, but did not remedy any of the issues raised in the preliminary objections. (*See* Amended Complaint, 2/22/16, at pages 2-15, Exhibits A-G). On March 14, 2016, Appellee filed a petition to strike the praecipe to index a *lis pendens* and preliminary objections to the amended complaint in which it raised the same issues it had claimed in its prior pleading, in addition to claims that Appellant failed to state a claim for equitable relief. (*See* Appellee's Preliminary Objections to Appellant's Amended Complaint, 3/14/16, at 7-27).

The trial court held oral argument on the preliminary objections on April 18, 2016. On May 25, 2016, the court sustained the preliminary objection in the form of a demurrer on the basis that the amended complaint was legally insufficient to state any cognizable claims against Appellee. The court dismissed Appellant's amended complaint, denied Appellant's motion to compel, and granted Appellee's petition to strike the *lis pendens*. Appellant timely appealed.[1]

> Appellant raises four questions for this Court's review:
>
> 1. Did the trial court err when it sustained preliminary objections based on its determination that a condition that "time is of the essence" effectively nullified [Appellant's] express right to a credit for damage to the property it sought to purchase and

---

[1] On July 11, 2016, Appellant filed a concise statement of errors complained of on appeal, pursuant to the court's order. *See* Pa.R.A.P. 1925(b). The court filed an opinion on August 23, 2016. *See* Pa.R.A.P. 1925(a).

- 5 -

precluded [its] claim for breach of contract and/or specific performance?

2. Did the trial court err when it sustained preliminary objections based on its determination that [Appellant] did not establish entitlement to an equitable exception to any contractual timing condition?

3. Did the trial court err in sustaining preliminary objections based on its determination that [Appellant] failed to meet the requirements of Pennsylvania Rules of Civil Procedure 2002(a) and 1019(i) because [it] did not attach a copy of a prior third-party assignment of the Option Agreement to its Amended Complaint even though Appellee . . . ratified the assignment through its actions negotiating with, and accepting payment from, the prior assignee?

4. Did the trial court err when it sustained preliminary objections based on its determination that the assignment of the Option Agreement to [Appellant] was invalid because the assignment did not reference [Appellant's] acceptance of its predecessor's contractual obligations?

(Appellant's Brief, at 2-3) (questions reordered for ease of disposition).

Our standard of review for a court's order sustaining preliminary objections in the nature of a demurrer is well-settled:

> A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true.
>
> In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint,

together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt.

Thus, the question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

Where the complaint fails to set forth a valid cause of action, a preliminary objection in the nature of a demurrer is properly sustained. The complaint need not identify specific legal theories, but it must provide essential facts to support the claim. Assertions of legal rights and obligations in a complaint may be construed as conclusions of law, which have no place in a pleading.

*412 North Front Street Assoc., LP. v. Spector Gadon & Rosen, P.C.*, 151 A.3d 646, 656 (Pa. Super. 2016) (citations and quotation marks omitted).

In its first issue, Appellant maintains that "any condition that time was of the essence should not be interpreted to abrogate [its] express contractual rights." (Appellant's Brief, at 34) (unnecessary capitalization and internal quotation marks omitted). We disagree.

The amended complaint states claims against Appellee for specific performance, breach of contract, and declaratory judgment. (**See** Amended Complaint, at 11-15). Each of these counts is premised on Appellee's alleged breach of the Option Agreement. (**See id.** at 12-14 ¶¶ 61, 65, 70).

In its preliminary objections, Appellee maintained that "the Amended Complaint fails to allege facts showing that [Appellee] breached the [Option] Agreement—a central element of each of [Appellant's] three claims . . . against [Appellee]—because [Appellee] was under no obligation to extend the existing November 13, 2015 closing date." (Preliminary Objections to Amended Complaint, at 19 ¶ 91) (citing Amended Complaint, at 12-14 ¶¶ 61, 65, 70). The trial court sustained this preliminary objection, finding that "[Appellant's] amended complaint fails as a matter of law to state any cognizable claims against [Appellee] and to establish any claim for equitable relief[.]" (Trial Court Opinion, 7/11/16, at 34) (unnecessary capitalization omitted). We agree.

"It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms[;] (2) a breach of the contract; and, (3) resultant damages." **See 412 North Front Street Assoc.**, **supra** at 657 (citation omitted).

"The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties. In cases of a written contract, the intent of

the parties is the writing itself." ***Lesko v. Frankford Hospital-Bucks County***, 15 A.3d 337, 342 (Pa. 2011) (citation omitted).

Here, the relevant sections of the Option Agreement stated that Appellee gave Appellant exclusive rights to conduct due diligence on the Property, which included "investigat[ing] at its own expense the condition, quality, and suitability of the [Property.]" (Option Agreement, at unnumbered page 1 ¶ 1(b)). The Agreement also provided Appellant with the option to purchase the Property. (***See id.*** at unnumbered page 2 ¶ 2). Once Appellant exercised the option, closing was to occur within sixty to ninety days, unless the parties otherwise agreed in writing. (***See id.*** at unnumbered page 4 ¶ 6(d)). All risk of loss was on Appellee prior to closing. (***See id.*** at unnumbered page 6 ¶ 6(i)(ii)). Section 6(i)(ii) further provided that, in the event of casualty involving the Property:

> [Appellant] may either (i) continue to closing, but [Appellee] will give [Appellant] a credit against the Purchase Price equal to the cost to repair the damage from such casualty **as determined by an insurance adjuster** engaged by [Appellant] and reasonably acceptable to [Appellee] . . . , **or** (ii) **terminate** this Agreement and this Agreement shall be null and void and of no force or effect.

(***Id.***).

Importantly, section 14 expressly stated: "**Time is of the essence** as to the performance of all of the terms and conditions of this Agreement." (***Id.*** at unnumbered page 8 ¶ 14) (emphasis added).

Based on the Option Agreement's language, the trial court found:

The law is settled in this Commonwealth that time is always of the essence in an option contract whether or not it is expressly provided unless the parties stipulate otherwise which . . . is not the case *sub judice*. Further, [Appellant's] failure to attach [Appellee's] Modification Letter[2] extending the closing to no later than November 1[3], 2015[;] with the express warning that "time is of the essence" in that regard to the Complaint and Amended Complaint suggests that [Appellant] believed that this Due Diligence and Option Agreement differed in no way from any other contract surrounding the sale of land.

This inference is reinforced by [Appellant] erasing all signs that time was of the essence from the wording of its pleadings and the lack of the Modification Letter from [Appellee] and its timing advisory being appended thereto. Because time was intrinsically of the essence when [Appellant] attended the closing on November 13, 2015, but did not perform its obligation to provide a damages estimate through which the sale price for this Property could be adjusted, the Agreement was terminated and voided by [Appellant] whose responsibility alone was to assure that the sale was consummated in a timely fashion. Simply put, [Appellant] could not obfuscate or erase this fact and escape its own burden by eliminating altogether any mention of the existence of that clause from its pleadings and the exhibits appended thereto.

(Trial Ct. Op., at 29) (citations omitted). We agree with the trial court's

reasoning that Appellant's failure to perform its obligations at closing

---

[2] Appellant did not attach this letter as an exhibit to the amended complaint. However, the amended complaint pleaded that Appellee agreed to extend the closing date to November 13, 2015. This is a material fact on which Appellant's claim is based and, pursuant to the terms of the Option Agreement, any extension of the closing date had to be by agreement of the parties and **in writing**. (*See* Option Agreement, at unnumbered page 4 ¶ 6(d)). Therefore, Appellant should have pleaded that the agreement to extend was in writing and attached it to the amended complaint. *See* Pa.R.C.P. 1019(i).

- 10 -

violated the time is of the essence requirement and terminated the Option Agreement.

It is well-settled that "[t]ime is always of the essence in an option contract." **New Eastwick Corp. v. Phil. Builders Eastwick Corp.**, 241 A.2d 766, 769 (Pa. 1968) (citations omitted). "[I]t is a sound legal principle that **unless an option is exercised within the time fixed it necessarily expires**[.]" **Western Sav. Fund Soc. of Phil. v. Southeastern Pa. Transp. Auth.**, 427 A.2d 175, 178 (Pa. Super. 1981) (citations omitted) (emphasis added).

Here, Appellant agreed to accept the assignment of the Option Agreement from Canopy on July 14, 2015, although the option termination date was scheduled for the next day. (**See** Amended Complaint, at page 4 ¶¶ 12-13). In spite of first having no opportunity to conduct due diligence on the Property, Appellant immediately exercised the option to purchase it. (**See id.** at page 4 ¶ 18). Closing was scheduled for October 15, 2015. (**See id.** at page 7 ¶ 28). On October 11, 2015, Appellant "became aware" of damage to the Property. (**Id.** at page 5 ¶ 20). Appellee agreed in writing to extend closing to enable Appellant the opportunity to inspect this damage, stating, the "closing date shall occur on or before November 13, 2015, **time being of the essence with respect thereto**. **[Appellee] shall not extend the closing date beyond November 13, 2015 for any reason**."

(Modification Letter, 10/14/15, at 1) (emphasis added); (**see also** Option Agreement, at unnumbered page 8 ¶ 14).

On October 20, 2015, Appellant identified Michael Simpson, AIC as an insurance adjuster pursuant to section 6(i)(ii) of the Option Agreement, and Appellee agreed to the selection on October 26, 2015. (**See** Amended Complaint, at page 7 ¶¶ 30-31). On November 12, 2015, Simpson provided a **preliminary** damage estimate, but stated he required a minimum of four more weeks to inspect the Property. (**See id.** at page 8 ¶¶ 32-33). Appellant did not provide Appellee with an insurance adjuster's determination on the extended closing date of November 13, 2015, but demanded that Appellee either provide it with a credit on the purchase price based on the preliminary estimate or extend the closing date, although neither of the two remedies was provided in the Agreement. (**See id.** at ¶¶ 35-36). However, contrary to Appellant's assertion, Appellee was under no duty to extend the closing deadline further where the Option Agreement expressly stated that time was of the essence and Appellee reiterated this fact in its October 14, 2015 letter granting Appellant an extension of the closing date. In fact, Appellee specifically advised Appellant that no more extensions would be granted for any reason.

Therefore, based on the foregoing facts, as pleaded in the amended complaint, because **time was of the essence** and Appellant did not fulfill its obligation to provide an insurance adjuster's determination pursuant to

section 6(i)(ii) of the Option Agreement, the Agreement terminated and the trial court properly found that Appellee is unable to state a claim for which relief can be granted. *See 412 North Front Street Assoc.*, *supra* at 656. Appellant's first issue lacks merit.[3]

In Appellant's second issue, it argues that, "[e]ven if a 'time is of the essence' condition is found to apply, equitable factors preclude its enforcement." (Appellant's Brief, at 39) (emphasis omitted). Specifically, Appellant asserts that it "was innocent with regard to the delay in closing" and that it "acted reasonably and diligently in its efforts to assess the damage and finalize the purchase." (*Id.* at 40). Appellant's claim does not merit relief.

> Anything short of the **utmost good faith and diligence** on the part of the party seeking to be relieved from the consequences of a failure to conform strictly to the terms of [an option] contract will not be regarded as sufficient; but where it appears that by the act of the other party, or by unavoidable

---

[3] Moreover, although Appellant maintains that Appellee breached the Agreement by "failing to keep the Property safe and secure[ and] allowing waste and diminution in value to the Property[,]" the amended complaint fails to identify **any** duty imposed by the Agreement in this regard. (Amended Complaint, at page 12 ¶ 61). In fact, it would not have been in Appellee's interest to allow damage to the Property where it bore "all risk of loss prior to any closing." (*Id.* at page 6 ¶ 25 (quoting Option Agreement, at unnumbered page 6 ¶ 6(i)(ii))). The plain language of the Option Agreement provides that Appellant had the duty to conduct due diligence and, had it conformed to the express terms of the Agreement by appearing at closing with the insurance adjustor's determination, Appellee, which bore the risk of any casualty, would have had the duty to provide a credit in the purchase price equal to the cost of the damage. (*See* Amended Complaint, at page 7 ¶ 27; Option Agreement, at unnumbered page 6 ¶ 6(i)(ii)).

accident of such character as could not be foreseen and guarded against, the performance of the contract, **with the exercise of due diligence was rendered impossible**, and the other party at the earliest opportunity performed his part of the contract, the court will enforce it.

*Western Sav. Fund Soc. of Phil.*, *supra* at 195 (citation omitted) (emphasis added).

In this case, Appellant did not plead that it exercised **any** due diligence after being assigned the Option Agreement and before exercising its option to purchase. (*See* Amended Complaint, at page 4 ¶¶ 13-18). Appellant pleaded that it accepted the assignment of the Option Agreement from Canopy **one day** before the option period expired, even though, pursuant to its express terms, this precluded it from extending the option term to conduct due diligence. (*See* Option Agreement, at unnumbered page 3 ¶ 4 (granting optionee leave to extend the option term upon written notice provided to optionor fifteen days before term's expiration); Amended Complaint, at page 4 ¶¶ 12-13). The amended complaint does not allege that Appellee in any way interfered with Appellant's opportunity to conduct due diligence before closing, let alone that it rendered it impossible. *See Western Sav. Fund Soc. of Phil.*, *supra* at 195. In fact, Appellee extended the closing date to allow Appellant the opportunity to assess any damage to the Property to enable it to provide a determination of costs at closing. (*See* Modification Letter, 10/14/15, at 1).

Therefore, based on the foregoing, we conclude that the trial court properly found that Appellant failed to exercise "the utmost good faith and diligence" where, as pleaded in the amended complaint, it accepted the assignment of the Option Agreement one day before the termination of the due diligence period, and then failed to insure that a complete inspection was performed before the extended closing date, which was granted specifically for that purpose. *Western Sav. Fund Soc. of Phil.*, *supra* at 195 (citation omitted). Hence, Appellant has failed to establish its right to be "relieved from the consequences of a failure to conform strictly to the terms of [an option] contract[.]" *Id.* (citation omitted). Accordingly, the trial court properly found that Appellant was not entitled to equitable considerations to relieve it of its duties under the time is of the essence provision. Appellant's second issue does not merit relief.

In summary, because we conclude that the trial court properly found that Appellant's violation of the time is of the essence provision of the Option Agreement rendered it unable to state a claim on which relief could be granted, we affirm its order sustaining Appellee's preliminary objections and dismissing Appellant's amended complaint where, "on the facts averred, the

law says with certainty that no recovery is possible." ***412 North Front Street Assoc., LP.***, ***supra*** at 656 (citation omitted).[4]

Order affirmed.

Judge Shogan joins the Memorandum.

Judge Solano concurs in the result.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/8/2017

---

[4] Because we conclude that the trial court properly sustained the preliminary objections on the basis of Appellant's failure to state a claim on which relief can be granted we need not reach its second two issues challenging the trial court's findings regarding the effect of Appellant's failure to attach documents to the amended complaint or the sufficiency of Canopy's assignment.